york versus Seneca County, number 1932. Good morning. May it please the court. Good morning, Your Honor. May it please the court. My name is Lou D. Lorenzo, and I represent the defendant appellant Seneca County in this proceeding. We seek the reversal of a district court decision that granted summary judgment to the Cuga Nation in its declaratory action seeking injunctive relief and denied summary judgment to Seneca County. As you know, Seneca County commenced task foreclosure proceedings to collect taxes on five parcels of land the Cuga Nation refused to pay real estate taxes on. The land was not the land was in the decision was found not to be land over which the Cuga Nation has sovereign control. The claim and the only issue I believe before this court on appeal is that the injunction was granted solely on the basis that the Cuga Nation had tribal immunity from suit. We submit that this was reversible error and ask that it be reversed and that Seneca County be allowed to proceed with tax foreclosure on this property. For several reasons, the tribal immunity exception does not operate to protect these five parcels, four parcels now after a merger of two of them. It doesn't operate to prevent that foreclosure. The as I said before, the land is not sovereign. It was repurchased, although it resides within. All these arguments that you are making in RAM, the removable property and all that have been made before. They have not been bought either by our court or by the Supreme Court. It may well be that they are correct arguments, but isn't our position essentially the position that Judge Cabranes took in an earlier version of something of this that it may seem absurd, but that's the way it is now and it's up to the Supreme Court to fix it and not up to us. I mean, isn't what you're arguing essentially saying the Supreme Court will and should change it? And the Supreme Court has told us that when they will and should change it, we should let them do it and not try to do it ourselves ahead of time. Well, Your Honor, that's one of the arguments that the Cougar Nation has made. I listened to Your Honor during the last motion say that in your 25 years on the bench, you had seen many times where cases come up on procedural issues, and then later when they come up on the merits, the decision is different. And that's what happened here. There was an injunction proceeding, the case came before this Court, and my firm did not handle that case, but everything I've read indicates several things have happened since 2014. One was the immovable property argument was not put squarely before the District Court or the Second Circuit. Secondly, the case arose here on the likelihood of success in a preliminary injunction to stop the irreparable harm that would result from, you know, 10 new owners and not knowing for sure who owned the property. Since 2014, we have the benefit of the Supreme Court's Lundgren decision. In the underlying case, as well as the Second Circuit case, the focus was on that Yakima decision, and all the lower courts around the country argued that Yakima was drawing a distinction between in rem and in persona. The Supreme Court made it clear to us in the Lundgren case that Yakima is, that these cases are not about in rem and in persona. You misread that case. The case is not about whether the tribe is operating in a commercial effort off its reservation. The one issue that's remained consistent since like 19 or 1812 through all these cases, through the restatement, through everything that's gone on, is that if the property is immovable, if the property is immovable and there's no That land for real estate ownership use purposes is subject to the law of the land that has the sovereignty over the land. Well, I know that an earlier decision was vacated when an agreement, when the case was mooted, but wasn't essentially that argument before them then and rejected by our court. And that, again, you know, there are any number of situations which seem kind of absurd that somebody has done something and yet sovereign immunity keeps that person from being sued. Some social security cases, any number of things. And is it really up to us? I think so, Your Honor. I think the right decision should be made. I think City of Sherrill said that this land can be taxed by the local real estate municipality. Anything else is unfair to the municipality, it's unfair to the neighboring landowners. Whether it's eminent domain, zoning, or taxes on the land, real estate taxes, the immovable property exception governs and we should be able to foreclose. I think that the nation would say, with some justification, that there's a difference between imposing a tax and enforcing through foreclosure on the property what is essentially a monetary debt. And the Foreign Sovereign Immunities Act distinguishes between jurisdictional immunity and execution immunity in that way. And so, and the court has recognized that one might impose a tax, the validity of a tax can be litigated and so on, but what one can do to collect the tax might be limited. So I think that there's some line drawing to be done here that you're not entirely acknowledging. Can I respond to that? Please do. Yeah, you have two minutes still. First of all, Your Honor, in the permanent mission case of India and Mongolia, it was made clear that a tax lien is actually an interference on the property. No one took the position that there's a difference between tax collection. The lien itself interferes with the possession and use of the property. It's still not foreclosure. It's still not foreclosure that affects a transfer in title. And this seems to be different from the eminent domain case, the Georgia and Chattanooga case, where that was an exercise of sovereign authority to take land that was owned. Go ahead. But Your Honor, lungren is adverse possession. Permanent mission is taxes. The other case is eminent domain. But this situation with immovable property and a tax lien that's imposed by operation of state law, the lien is on the land. There's a lien. The question is whether we can collect it. City of Sherrill, the Supreme Court said you can impose real estate taxes. I would think that if they meant you can impose them but you can't collect them, somebody would have told us that. They said you can collect taxes. Well, if you can't collect them, if you can't tax on the land, you can't foreclose, you really can't tax them. Well, but that anomaly has been recognized in the context of sovereigns. Justice Rehnquist has written about that. And we're still looking what's essentially a monetary debt as opposed to an action such as eminent domain taking the property, aren't we? Your Honor, I think that a tax lien which runs with the property, which is a lien encumbrance on the title, which affects, as Justice Thomas said, the quintessential aspect of ownership, which is sale. I mean, if that tax is — Was he dissenting? Quintessential. No, but Justice Thomas, when he said that, was that in dissent? It was in dissent, Your Honor, but it's not a true dissent because the Court made it clear that this immovable property had a great deal of attraction to them but had not been decided by anyone yet. He dissented from the idea that we don't need to send it back to the State of Washington. We can decide this. It's been briefed. It was only raised in the reply brief by the United States Government. And the majority of the Court felt that they needed an opportunity. The real only dissent was not on the substantive nature of the ruling and the doctrine of immovable property, but rather on the procedural aspect that it was being sent back. Yes. And we could decide now. In any event, if we want to treat it more as a concurrence than a dissent, it wasn't a holding of the Court. It was his own opinion. And Justice Ginsburg, Your Honor. Yes. All right. The two of them. Thank you. Thank you very much. Thank you very much. You have two minutes of rebuttal. Yes. We'll hear from the Indian Nation, please. Thank you, Your Honor. David DeBruin for the Cayuga Nation. May it please the Court. This Court has already decided, not just in Madison County, back in the decision with Judge Cabranes, but in this very case, that the Cayuga Nation is entitled to sovereign immunity from foreclosure. Neither of those are entitled that we have to follow. The previous case was vacated because it was mooted, and the other one was on an injunction. So that we are not technically bound. I agree with you that twice our Court has said your position is the dominant one, but we're not bound by that, are we? Your Honor, the previous appeal in this case on a preliminary injunction presented this very legal issue, and this Court rejected the very same arguments the County is making. It rejected the Sherrill argument, and more significantly, it rejected the immovable property argument that the County is now making. Are you saying really squarely we analyzed the immovable property exception, we looked back at the restatement? I mean, I think it was a very brief discussion, and it was in the context, as Judge Calabresi is saying, of a review that was circumscribed by the procedural setting. Your Honor, I believe the Court did. First of all, it was a specific section of the County's argument, not just a throwaway footnote. It was an entire section of the argument, and it was argued extensively at oral argument. I would urge the Court to go back and listen to the 2014 argument in this case, when counsel for the County made the point that when a prince purchases land in another's — Well, the argument you are making is that we owe deference to a previous panel that looked at this and told us quite clearly what it believed. That is different from being bound by it, but three of our colleagues spoke about it, at least at lunch. It's a little embarrassing if we say, yeah, you spoke about it, but we think it's nonsense. Again, I submit it's a legal issue, not dependent on facts that were further developed. But laying that aside, this Court correctly decided on the merits that Baymill makes clear and the cases before it that sovereign immunity is the baseline and is not the business of the courts to carve out exceptions. I would submit for three separate reasons But isn't Skagit — isn't Upper Skagit Indian Tribes signaling, though, a — the Supreme Court's willing embrace — let's put it that way — of an in rem exception to sovereign immunity? I don't believe so, Your Honor. First of all, again, Upper Skagit rejects the in rem discussion — the distinction. And as to immovable property, the Court did not decide that issue, recognized that further briefing may develop contours. And there are three reasons, three separate reasons, all of which are substantial, why the immovable property doesn't apply here. One is this Court recognized, Judge Carney, in your questions, it does not apply to a foreclosure action. The issue of enforcement is distinct from the issue of This is very important. When Congress addressed the very issue of enforcement in the case of foreign sovereigns, it required that the property be used for a commercial use. And this Court, in its prior decision in this case, emphasized that that exception for commercial uses does not apply to Indian nations under the Kiowa decision. And if you look at the relating to foreclosure and enforcement distinct from the immovable property exception itself, and it makes clear it only applies when the property is used for a commercial reason. And we know that the Supreme Court has rejected that distinction for Indian nations. And third — But the — oh, go ahead, please. The third reason, just to say it so I can come back to it, this land is reservation land. And I submit there has never been a case holding that when an Indian nation that was granted reservation land by treaty loses that land in an unlawful transaction by the State of New York, reacquires that land, could lose that land by foreclosure. And that's just the third separate reason that is different. This is not a foreign sovereign — It's your alternative argument, right? Yes, it is. That, right. This is not a foreign sovereign going outside its domain. This is the Cayuga Nation within its domain. Admittedly, there are parallel overlaps between the county and the State jurisdiction and the Cayuga jurisdiction, but the Cayuga retain authority over their own reservation. There has never been a case holding that foreclosure would be allowed. This is precisely the sort of line drawing that should be left to Congress, because the doctrine of sovereign immunity is a doctrine that essentially one sovereign is extending to another. When it was held that this property, because it was sold and bought back, is not the same as the original property and hence can be taxed, a distinction was made between traditional reservation property and this property, wasn't it? That is correct. We are subject to the imposition of appropriate tax laws. We, of course, contend that under New York State law, because this is reservation land, it is not even subject to tax. Yes, but you lost that. No, we haven't lost that. That hasn't been litigated, because we're also immune from suit. And that immunity exists for multiple reasons. It exists as a part of our inherent sovereignty, but as to this immovable property exception, I submit that the fact that we — this is not outside of our domain, but this is treaty land, makes yet another distinction. And again, that's an issue not for this Court to resolve or even the Supreme Court. The Supreme Court has made clear that's a question for the political branches. Here, the United States has consistently maintained that the immovable property exception does not apply to Indian nations. That was the point of the United States in the upper Skagit case, saying the whole immovable property doctrine does not apply to Indian nations. So that's the position of the executive branch. But ultimately, the Supreme Court has made clear this is an issue for Congress. Congress does legislate in this space. In 1998, in the Keogh decision, the Supreme Court said we're not going to carve out an exception for commercial activity, questioning whether that made sense, but deferring to Congress, and Congress has not acted. When Congress did act as to foreign sovereigns, it limited this so-called immovable property exception, when it comes to foreclosure, in section 1610, to commercial properties. And that is a distinction for Indian nations Congress has never imposed, despite the Keogh decision, inviting Congress essentially to act in this space. Congress has acted for foreign sovereigns. It enacted the entire Foreign Sovereign Immunities Act. It has not comparably acted for Indian nations, leaving the law as it is, and the law is clear. And that's what this Court recognized in 2014. Let me ask a factual question. Does the record show whether these five parcels that were reacquired by the tribe receive any services from the county or nearby municipalities? The record does not show what these properties are used for. Again, this case has been litigated on the basis of sovereign immunity from suit, which is respect accorded to the Indian nation as a sovereign. But I'm just interested, you know, is there plumbing? Is there water that's supplied? Are there services that the taxes would ordinarily be used for? That is not in the record. But what I believe is significant is when you're dealing with sovereign-to-sovereign interactions, those kind of issues often are dealt with by negotiation. And that is the kind of alternative the Supreme Court has emphasized is appropriate. And as we know, the Oneida Nation and the State of New York and its subdivisions reached an agreement to deal with these issues. Are you suggesting that the State of New York could keep these services from being given and only give them in exchange to a contractual or to a waiver? Is that what you're driving at? I'm not driving that the State could. What I'm driving at is that these kind of tradeoffs, services, payments, sovereign-to-sovereign, are often and most appropriately dealt with by negotiation. That is one of the purposes of the sovereign immunity doctrine. And that's what the Chief Justice commented on, is that the his dissatisfaction in the Lundgren case, that the Lundgrens should steer into conflict to try to get the property lines straightened out. It doesn't seem, I mean, it sounds like it's But the Chief Justice did not decide that issue, even though he recognized that, that he wasn't enamored with the prospect of chainsaw wars. But nevertheless, he recognized that the doctrine might not apply to Indian nations, and he wasn't going to decide that issue and leave it That's part of what underlies the objection to dissociation of the property right and the tax lien and the taxes imposed on the land. In all of these cases, there is that tension. In Pottawatomie, which is one of the seminal cases, the Supreme Court says, yes, a tax can be imposed. Obligation to collect the tax is valid, but no, you can't bring an action to enforce it. That tension is inherent in the doctrine of sovereign immunity from suit, even when the tax is valid. The restatement recognizes that in section 65, comment D, that there is a tension between the validity of a tax obligation and the means to enforce it. And yes, maybe this isn't the most efficient means to enforce it, imposing a lien which prevents a sale or land into trust. Those kind of restrictions can help enforce. They're not the most efficient, but that's part of the tension in this law. It's up to Congress to resolve it. Thank you very much. Thank you. We'll hear rebuttal. Your Honor, just picking up on this issue of negotiation, there are cases that say that there's ways to deal with this immunity in contracts, negotiations, and so on. We didn't have that opportunity here. Seneca County, the Cuban nation purchased the land. They're in our county. They get treated the same as all the rest of the landowners. They're subject to zoning issues and all the others. All the services are made available. We're not asking to treat them differently. We want them just treated the same as everybody else and pay the freight. No free rides on the real estate issues that are provided by our municipality. Would it be unconstitutional for you to treat them differently because they cannot be enforced? Couldn't you do that? I mean, couldn't you? It would be inefficient, perhaps, but couldn't you say that as to this land, we will not give services because we can't collect taxes? I'm not sure, Your Honor, but I know one of the things that we're interested in is not having any conflict with them and not having any of our disputes decided outside of the courtrooms. We want them to be neighbors. We just want them to pay the freight that's required of all the other neighbors. One of the arguments made was that sovereign immunity line was drawn, baseline, and so on. Your Honor, as Justice Scalia said, as Justice Thomas said, this law of immovable property is Hornbook law as long as there have been It's been around forever. I don't know why it hasn't been decided by anybody. Every time the Supreme Court agrees to take certiorari, the unions, the Indians agree to waive sovereign immunity so the issue doesn't get decided by them. But it's clear that it's been around forever. It's no exception. It's coexisted with sovereign immunity since the early 1800s, perhaps the 1600s. Your Honors, I'll leave you with this. Well, first of all, the idea that somehow the Second Circuit or the District Court addressed this idea, I can't find. I told you I didn't represent them then. But I can't find those two words, immovable property, in your decision or that decision. And that boggles my mind. I've been in front of this court for about 35 years and I know that when they decide an issue, they at least mention the words and I can find them. I can't find these in either one of those decisions. Thank you very much.